UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
———————————————————-———X
SAMANTHA EDNIE,

               **COMPLAINT**

      Plaintiff,

Against            Civil Action No.:

STATE UNIVERSITY OF NEW YORK and
STONY BROOK UNIVERSITY,

      Defendants.
———————————————————-—X

  **NOW COMES** the above-named Plaintiff, by and through her undersigned counsel, and together bring this Complaint against the above-named Defendants, their employees, agents, and successors in office, and in support thereof allege the following upon information and belief:

## INTRODUCTION

  "No matter how dire the crisis- constitutional protections remain commandments, **not suggestions**." Air Force Officer v. Lloyd J. Austin, III, et al., Civil Action No.: 5:22-cv-00009-TES (U.S.D.C., Georgia).

  It is transparent that Stony Brook University's process to protect religious rights is both ***illusory and insincere***. In short, it's just "theater."

  The First Amendment, as incorporated through the Fourteenth Amendment, prevents a state from "prohibiting the free exercise" of religion. U.S. CONST. amend. I; *see Mount Elliott Cemetery Ass'n v. City of Troy*, 171 F.3d 398, 403 (6th Cir. 1999). Burdens on one's free exercise may be direct, as where a state criminalizes a particular faith or religious practice. *See Emp. Div., Dep't of Hum. Res. v. Smith*, 494 U.S. 872, 877–78 (1990). But "indirect coercion or penalties on the free exercise of religion, not just outright prohibitions," also trigger scrutiny

1

under the Free Exercise Clause. *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 137 S. Ct. 2012, 2022 (2017) (citation omitted). Accordingly, a policy that forces a person to choose between observing her religious beliefs and receiving a generally available government benefit for which she is otherwise qualified burdens her free exercise rights. *See Fulton v. City of Phila.*, 141 S. Ct. 1868, 1876 (2021); *Trinity Lutheran*, 137 S. Ct. at 2023. The reason is simple: denying a person "an equal share of the rights, benefits, and privileges enjoyed by other citizens" because of her faith discourages religious activity. *Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 449 (1988). Consider *Fulton*. There, a city gave a foster agency the choice of foregoing a contract to place children with foster parents, which it deemed its religious "mission," or "approving relationships inconsistent with its beliefs." 141 S. Ct. at 1876. By putting that choice to the foster agency, the city impaired the foster agency's ability to exercise its faith. *Id.* at 1876. Similarly, *Sherbert v. Verner* held that denying unemployment benefits to a Seventh-day Adventist for not working on the Sabbath burdened her religious exercise. 374 U.S. 398, 400–03 (1963).

### The Covid-19 Vaccines DO NOT PREVENT Transmission

Only months ago, a Pfizer executive confirmed at a hearing in front of the European Parliament that the company **did not test its COVID-19 vaccines before they entered the market to determine whether they prevented the transmission of COVID-19.**

During a hearing on the European Union's COVID-19 response, when asked if the Pfizer vaccine was tested on stopping the transmission of the virus before it entered the market, Pfizer's president of international developed markets stated "**[n]o ... we have to really move at the speed of science to really understand what is taking place in the market ... and from that point of view we had to do everything at risk.**" Special Committee On COVID-19 Pandemic,

Eur. Parl. (Oct. 10, 2022), tinyurl.com/ku2w7u3z; news.com.au, Pfizer did not know whether Covid vaccine stopped transmission before rollout (Oct. 12, 2022), Youtube, tinyurl.com/4f4vam8z.

On August 5, 2021, CDC Director Dr. Rochelle Walensky told CNN's Wolf Blitzer that the Covid-19 vaccine cannot prevent the transmission of the disease. https://www.thegatewaypundit.com/2021/08/cdc-director-tells-cnn-covid-vaccines-cant-prevent-transmission-video/ **If the covid-19 vaccine no longer prevents transmission of the disease, there should no longer be any mandates for anyone.**

> BLITZER: But what about all the fully vaccinated people who get the breakthrough infection? Can they pass it on? Could they pass it on to their children? Could they pass the virus on to older people, especially more vulnerable people with underlying health conditions?
>
> WALENSKY: And that's exactly the point that we made in our guidance.
>
> So, yes, they can with the delta variant. And that was the reason that we changed our guidance last Tuesday. Our vaccines are working exceptionally well. They continue to work well with delta with regard to severe illness and death. They prevent it.
>
> But what they can't do anymore is prevent transmission. So if you are going home to somebody who has not been vaccinated to somebody who can't get vaccinated, somebody who might be immunosuppressed or a little bit frail, somebody who has co-morbidities that put them at high risk, I would suggest you wear a mask in public indoor settings.

On December 29, 2020, the World Health Organization's chief scientist, Dr. Soumya Swaminathan, stated that there was a lack of evidence "to be confident that it's going to prevent people from actually getting the infection and therefore being able to pass it on." [1]

---

[1] Sky News Australia, WHO Doesn't have evidence vaccines prevent people transmitting virus to others, Youtube (Dec. 28, 2020), tinyurl.com/zyeuefzu.

Nearly a year later, **World Health Organization officials admitted that the vaccines "did not fully prevent transmission."**[2] Indeed, various studies have seriously undermined the narrative that vaccination prevents the transmission of COVID-19, especially the delta and omicron variants.[3]

# NATURE OF THE CASE

1. This case seeks to protect and vindicate statutory, and fundamental constitutional rights. Plaintiff brings a civil rights action under the First and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983, and for other statutory and constitutional violations, challenging Defendants' acts, policies, practices, customs, and procedures, which deprived Plaintiff of her First Amendment rights.

2. Defendants unjustly discriminate against Plaintiff because of her sincerely held religious beliefs and her viewpoints by mandating that she must take the Covid-19 vaccine in order to enroll in in-person classes and to play on the lacrosse team.

---

[2] Covid-19 Virtual Press conference transcript, WHO (Nov. 24, 2021), tinyurl.com/753x25ky.

[3] See, e.g., Gunter Kampf, *The epidemiological relevance of the COVID-19-vaccinated population is increasing,* 11 The Lancet Reg1 Health, Eur. 100272 (2021), tinyurl.com/2jfptbar; Anika Singanayagam, et al., *Community transmission and viral load kinetics of the SARS-CoV-2 delta (B.1.617.2) variant in vaccinated and unvaccinated individuals in the UK: a prospective, longitudinal, cohort study,* 22 The Lancet, Infectious Diseases 183 (2022), tinyurl.com/2p98x53e; Carlos Franco-Paredes, *Transmissibility of SARS-CoV-2 among fully vaccinated individuals,* 22 The Lancet, Infectious Diseases 16 (2022), tinyurl.com/yp5d3r66; Lihong Liu, et al., *Striking Antibody Evasion Manifested by the Omicron Variant of SARS-CoV-2,* 602 nature 676 (2022), tinyurl.com/mf9dn358; David W. Eyre, et al., *The impact of SARS-CoV-2 vaccination on Alpha & Delta variant transmission,* tinyurl.com/34tr2wk.

3. Specifically, Defendants' vaccine mandate seeks to override Plaintiff's sincerely held religious beliefs and viewpoint and discriminates against her on the basis of her religion.

4. As set forth in this Complaint, the policies, practices, customs, and procedures of Defendants (hereinafter "Stony Brook") were the cause of, and the moving force behind, the statutory, and constitutional violations in this case.

5. Plaintiff seeks:

a. injunctive relief enjoining the unconstitutional application of Stony Brook's policies, practices, customs and procedures as set forth in this Complaint, all with a temporary restraining order, preliminary injunction, and permanent injunction;

b. a declaration that Defendants violated Plaintiff's clearly established statutory and constitutional rights;

c. a declaration that the training, supervision, policies, practices, customs, and procedures of Defendants as set forth in this Complaint violate the United States Constitution and the New York Constitution;

d. a finding that Defendants actions violate state and federal anti-discrimination laws;

e. an award of nominal damages; and

f. an award of their reasonable costs of litigation, including attorneys' fees and costs, pursuant to 42 U.S.C. §1988 and other applicable law.

## JURISDICTION AND VENUE

6. This action arises under the Constitution and laws of the United States and of the State of New York. Jurisdiction is conferred on this Honorable Court pursuant to 28 U.S.C. § 1331 and 1343, as well as under 42 U.S.C. § 2000a, *et seq.*, and 42 U.S.C. § 1983, and other Federal and State laws and regulations, to redress violations of federal and state statutes.

7. This Honorable Court has jurisdiction pursuant to Article III of the United States Constitution, 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a). Declaratory relief is authorized pursuant to 28 U.S.C. § 2201 and 2202.

8. This Honorable Court has supplemental jurisdiction regarding the remaining state claims pursuant to 28 U.S.C. § 1367.

9. Plaintiff's claims for declaratory and injunctive relief are authorized by 28 U.S.C. § 2201 and 2202, by Rules 57 and 65 of the Federal Rules of Civil Procedure, and by the general legal and equitable powers of this court. Plaintiff's claims for damages are authorized under 42 U.S.C. § 1983, 42 U.S.C. § 2000d-7, and by the general legal and equitable powers of this Honorable Court.

10. Venue is proper under 28 U.S.C. § 1391(b) because Defendants are located in this District and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District.

## PARTIES

11. Plaintiff is a student at Stony Brook University. She was on the Stony Brook University Lacrosse Team and is on an athletic scholarship. Plaintiff's sincere and genuine

religious beliefs compel her to refuse the covid-19 vaccinations, all of which employ aborted fetal cells in their testing, development or production. Plaintiff applied for a religious exemption based on her sincere and genuine religious beliefs and was denied without an explanation or an opportunity to appeal.

12. At all times hereinafter mentioned, the Respondent, SUNY Stony Brook University is part of the State University of New York and is a domestic corporation duly licensed to do business under the laws of the State of New York and is supported by the State of New York.

13. At all times hereinafter mentioned, the Respondent, State University of New York, is the largest comprehensive university system in the United States and is supported by the State of New York. The State University of New York (SUNY), was established in 1948. The system includes 64 schools including Respondent Stony Brook University, a mix of 29 state-operated campuses and five statutory colleges—including research universities, liberal arts colleges, specialized and technical colleges, health science centers, land-grant colleges—and 30 community colleges. These institutions offer programs as varied as ceramics engineering, philosophy, fashion design, optometry, maritime studies, law, medical education, and everything in between. The University also operates hospitals and numerous research institutes.

14. Defendants' vaccine mandate does not apply to all at Stony Brook University. There is no vaccination mandate for all employees and staff at Stony Brook University.

15. Plaintiff is willing to take other preventative measures, like weekly testing, masking, etc.

16. As part of her personal identity and autonomy, Plaintiff sincerely believes that she has a duty and obligation to live out her faith in all areas of life, including personal medical decisions.

17. Defendants' policies punish her for exercising her constitutionally and statutorily protected rights to make her own medical decisions consistent with her faith and in consultation with her doctors and other medical professionals.

18. Defendants adopted a policy, practice, custom, and procedure requiring and forcing Plaintiff to take one of the Covid-19 vaccines, or be removed from school and her position on the Stony Brook women's lacrosse team and lose her right to participate in intercollegiate athletics.

19. Plaintiff submitted her religious exemption request to Stony Brook University. Plaintiff expressly articulated her sincerely held religious Christian belief and articulated how taking the shot would substantially interfere with the exercise of this sincerely held religious belief. (See Religious Exemption Statement as Exhibit A).

20. Plaintiff also submitted a Letter of Support from the Roman Catholic Diocese of Rockville Centre. (See Diocese Letter attached as Exhibit B).

21. The Letter from Father Michael J. Plona reads, *"The Catholic Church teaches that, "practical reason makes evident that vaccination is not, as a rule, a moral obligation and that, therefore, it must be voluntary." It is my sincere belief that Samantha, through her conscience informed by the clear and consistent teaching of the Catholic Church has judged that she ought not to receive the COVID-19 Vaccine. Her position is a legitimate position a Catholic may take."*

22. Plaintiff stated her sincerely held Christian beliefs to Defendant and explained to Defendants why these sincerely held beliefs prevented her from taking the COVID-19 shot.

23. Defendants denied the requested religious exemption and informed Plaintiff that its decision was final and no further appeal was available to them. (See Denial as Exhibit C).

24. The National Collegiate Athletic Association (NCAA) does not require Defendants to implement this policy mandating a medical treatment in order to participate in intercollegiate athletics.

25. Defendants do not require all employees to be vaccinated in order to be physically present on campus, to eat in the cafeterias, to visit the libraries or to attend intercollegiate athletic events.

26. Defendants adopted, authorized, mandated, and approved these policies, which forces Plaintiff to take the vaccine shot in direct opposition to, and in violation of, Plaintiff's personal identity, autonomy, and her sincerely held religious beliefs and convictions, and in violation of its own policies, federal and state statutes, and constitutional provisions.

27. Defendants' policies, practices, customs, and procedures encourage school officials, and others, to silence and disparage opinions, ideas, and viewpoints that disagree with its medical determination made without consulting with Plaintiff's doctors or accommodating Plaintiff's religious objections.

28. Defendants' training, supervision, policies, practices, customs, and procedures chill the expression of religious viewpoints, such as those held by Plaintiff.

29. Defendants' training, supervision, policies, practices, customs, and procedures demean and diminish the personal autonomy and dignity of Plaintiff and all students who have a differing viewpoint and disagree with Stony Brook University's policies and actions.

## **COUNT I - FREE EXERCISE OF RELIGION VIOLATION**

(First Amendment; 42 U.S.C. § 1983)

30. Plaintiff hereby incorporates by reference paragraphs 1 through 29 as if fully restated herein.

31. By reason of the aforementioned acts, policies, practices, customs and procedures created, adopted, and enforced under color of state law, Defendants deprived Plaintiff of her right to the free exercise of her sincerely held religious beliefs in violation of the First Amendment, as applied to the states and their political subdivisions under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

32. Defendants violate Plaintiff's First Amendment right to freely exercise her religious beliefs by mandating an invasive medical treatment that substantially interferes with Plaintiff's religious free exercise rights.

33. Defendants' policies violate the First Amendment by punishing students who exercise their religious beliefs in connection with their personal medical decisions.

34. Plaintiff's compliance with her sincerely held religious beliefs is a religious exercise.

35. Defendants' policies and practices are not general laws as they specifically target Christians who share Plaintiff's sincerely held religious views, but leave untouched students who ascribe to other or no faith traditions.

36. By design, Defendants' exemption denials, policies and practices are imposed on some religious students, but not on others, resulting in unjust discrimination amongst religious beliefs.

37. Defendants' policies and practices further no compelling governmental interest as they directly violate Plaintiff's First Amendment rights to free exercise of religion.

38. Defendants' policies and practices fail to provide the least restrictive means of furthering any stated interest and are not narrowly tailored.

39. Defendants' policies and practices create government-imposed, coercive pressure on Plaintiff to change or violate her sincerely held religious beliefs.

40. Defendants' policies, practices, customs, and procedures, punish and impose discipline on any student for exercising his or her right to free exercise of their religious beliefs. Defendants' actions injure Plaintiff by chilling her religious activity and religious speech through threat of discipline and sanction by Defendants for failure to comply with its new policies.

41. As a direct and proximate result of Defendants' violation of the First Amendment, Plaintiff has suffered, and will suffer, irreparable harm, including the loss of their fundamental constitutional rights, entitling her to declaratory and injunctive relief. Additionally, Plaintiff is entitled to nominal damages and compensatory damages for the loss of her constitutional rights.

## COUNT II - RIGHT TO PRIVACY, PERSONAL AUTONOMY, AND PERSONAL IDENTITY

(Fourteenth Amendment; 42 U.S.C. § 1983)

42. Plaintiff hereby incorporates by reference paragraphs 1 through 41 as if fully restated herein.

43. By reason of the aforementioned acts, policies, practices, customs and procedures created, adopted, and enforced under color of state law, Defendants deprived Plaintiff of her

fundamental constitutional right to privacy, personal autonomy, and personal identity, all in violation of the Fourteenth Amendment as applied to the states and their political subdivisions under the Fourteenth Amendment to the United States Constitution and 42 U.S.C. §1983.

44. Defendants further deprived Plaintiff of her fundamental right to bodily integrity to make her own informed medical decisions with the assistance of their personal physicians.

45. By favoring and enforcing policies that approve of and force medical treatment over Plaintiff's right to privacy, personal identity and personal autonomy, Defendants violate Plaintiff's Fourteenth Amendment rights.

46. Defendants' conduct deprives Plaintiff of her personal choices central to individual dignity and autonomy, including intimate choices defining personal identity and beliefs by stigmatizing and labeling her sincerely held religious beliefs as unworthy of protection by Defendants.

47. Defendants' policies, practices, customs, and procedures, punish and impose discipline on Plaintiff for alleged violations of Defendants' new policies, simply for exercising her religious and medical right to make her own medical decisions. Defendants' actions injure Plaintiff by violating her constitutional rights through threat of discipline and sanction by Defendants for failure to comply with its new policies.

48. As a direct and proximate result of Defendants' violation of the Fourteenth Amendment, Plaintiff has suffered, is suffering, and will continue to suffer, irreparable harm, including the loss of her fundamental constitutional rights, entitling her to declaratory and injunctive relief. Additionally, Plaintiff is entitled to nominal damages and compensatory damages for the loss of her constitutional rights.

# COUNT III – DISCRIMINATION IN PLACES OF PUBLIC ACCOMMODATION

(42 U.S.C. § 2000a, et. seq.)

49. Plaintiffs hereby incorporate and repeat herein paragraphs 1 through 48 above as if fully restated herein.

50. Defendants operate its school as a place of public accommodation as defined in 42 U.S.C. § 2000a, et. seq. (hereinafter referred to as the Act).

51. Defendants are involved in commerce as defined in the Act.

52. Defendants' implementation of its policies and procedures to mandate vaccinations for student athletes violate the Act and deprive Plaintiff of her civil rights by subjecting Plaintiff to conduct which has the purpose and effect of denying them the full benefit of the public accommodations and educational facilities at Defendants' school buildings and athletic venues and denies them full and equal access to the use and privileges of its public accommodations and educational facilities, on the basis of religion.

53. Defendants' policies have the purpose or effect of substantially interfering with Plaintiff's right to access and utilize public accommodations and public services, including education and athletic participation, and creates an intimidating, hostile, or offensive public accommodation, public service, and educational environment for all the above-stated reasons.

54. As a direct and proximate result of Defendants' violations of the Act, Plaintiff has suffered, are suffering, and will continue to suffer, damages, including the following:

    A. Loss of use of school facilities.

    B. Fear about using the school facilities.

  C. Embarrassment and humiliation.

  D. Severe emotional distress.

  E. All other damages that reasonably flow from Defendants' outrageous and illegal policies, practices, procedures, and actions.

## COUNT IV - VIOLATION OF THE FREE EXERCISE CLAUSE OF THE NEW YORK CONSTITUTION

55. Plaintiff hereby incorporates and repeats herein paragraphs 1 through 54 above as if fully restated herein.

56. According to the New York Constitution, "*the Free Exercise and enjoyment of religious profession and worship, without discrimination or preference, shall be forever be allowed in this State to all mankind.*"

57. By reason of the aforementioned acts, policies, practices, customs and procedures created, adopted, and enforced under color of state law, Defendants deprived Plaintiff of her right to the free exercise of her sincerely held religious beliefs in violation of the Free Exercise Clause of the New York Constitution.

58. Defendants violate Plaintiff's right to freely exercise her religious beliefs by mandating an invasive medical treatment that substantially interferes with Plaintiff's religious free exercise rights.

59. Defendants' policies violate the New York Free Exercise Clause by punishing Plaintiff who exercises her religious beliefs in connection with her personal medical decisions.

60. Defendants' policies and practices are not general laws as they specifically target Christians who share Plaintiff's sincerely held religious views, but leave untouched others who ascribe to other or no faith traditions.

61. Defendants' policies and practices further no compelling governmental interest as they directly violate Plaintiff's right to free exercise of religion under the New York Constitution.

62. Defendants' policies and practices fail to provide the least restrictive means of furthering any stated interest and are not narrowly tailored.

63. Defendants' policies and practices create government-imposed, coercive pressure on Plaintiff to change or violate her sincerely held religious beliefs.

64. Defendants' policies, practices, customs, and procedures, punish and impose discipline on Plaintiff for exercising her right to free exercise of her religious beliefs.

65. Defendants' actions injure Plaintiff by chilling her religious activity and religious speech through threat of discipline, termination or sanction by Defendants for failure to comply with its new policies.

66. As a direct and proximate result of Defendants' violation of the New York State Free Exercise Clause, Plaintiff has suffered, and will suffer, irreparable harm, including the loss of her fundamental constitutional rights, entitling her to declaratory and injunctive relief. Additionally, Plaintiff is entitled to nominal damages and compensatory damages for the loss of his constitutional rights.

# PRAYER FOR RELIEF

WHEREFORE, Plaintiff asks this Honorable Court:

A.  to declare that Defendants' vaccine mandate policy which denied Plaintiff's religious accommodations is invalid and unconstitutional for all the reasons as set forth in this Complaint;

B.  to declare that Defendants' decision to deny the religious exemption be annulled, voided and vacated; and

C.  to declare that Defendants acted unconstitutionally, outside their authority, and in an *ultra vires* manner as set forth in this Complaint;

D.  to declare that Defendants violated Plaintiffs' fundamental constitutional rights as set forth in this Complaint;

E.  to declare that Defendants' violated Plaintiffs' statutory rights as set forth in this Complaint;

F.  to declare that Defendants' policy violates the New York's Constitution Free Exercise Clause for all the reasons as stated above;

G.  to issue an ex-parte temporary restraining order, preliminary and permanent injunctions enjoining Defendants' from removing Plaintiff from classes and the Stony Brook University Lacrosse team;

H.  to award Plaintiffs nominal damages;

I.  to award Plaintiff her reasonable attorney fees, costs, and expenses pursuant to 42 U.S.C. § 1988, Title IX, and other applicable law; and

J. grant such other and further relief as is just and appropriate.

Dated: January 17, 2023
   Syosset, New York

        **THE MERMIGIS LAW GROUP, P.C.**
        *Attorneys for Plaintiff*

        */s/ James Mermigis*
        _____
        James G. Mermigis, Esq.
        85 Cold Spring Road, Suite 200
        Syosset, NY 11791
        (516) 353-0075
        (516) 682-0011 Facsimile
        MermigisLaw@GMail.com